## THE GRACE LITTLETON.

### LYONS *v.* THE GRACE LITTLETON.

*(District Court, D. South Carolina. April 23, 1892.)*

**SEAMAN'S WAGES—REFUSAL TO GO ABOARD—INTOXICATION—CONTRACT.**
Where a seaman, who has signed shipping articles, went to his vessel, on her sailing day, intoxicated, and declined to go aboard, and the master, being pressed for time, thereupon shipped another man, *held* that, while the fact that he was drunk was not a sufficient ground for a rescission of his contract, his refusal to go aboard entitled the master to supply his place, and, when the place was filled, no subsequent application could help him.

In Admiralty.
*Huger Sinkler*, for libelant.
*Bryan & Bryan*, for respondent.

SIMONTON, District Judge. This is a libel for damages for breach of contract of hire of a seaman. Libelant signed shipping articles for the Grace Littleton on 19th March, for a voyage to West Indies, at $20 per month. When he signed he was told to go aboard the next day at 7 o'clock A. M., as the vessel would sail that afternoon. The vessel was at the Northeastern Railroad wharf, and libelant did go to her the next day about 9 A. M. Now comes the inevitable conflict of testimony. He says that he went to the vessel with his duds, ready to enter upon his engagement, and that the master refused to let him go aboard, alleging that he was drunk; that, although he had taken a glass of beer or so, he was sober; that during the day he sought the master, with his counsel, and offered again to fulfill his contract. Mr. Getty, a clerk at the wharf, says that he saw a sailor at that wharf that morning going towards the schooner, and that, although he evidently had been on a heavy spree, he had sobered up. I will come to his testimony again. Hendrix, the

boarding house keeper, says that this sailor was staying at his house with the two other sailors, who had signed the same articles as he had; that pursuant to appointment he got them ready the morning of the 19th to proceed in his wagon to the vessel; that the other two were ready with their duds, but that libelant could be found nowhere. Putting his baggage on the wagon, they started, and finding libelant on their way, at the corner of State and Cumberland streets, they went to the Northeastern Railroad; that libelant had all the appearance of a drunken man, and had a pint bottle of whisky in his pocket, from which he took drinks on his way up; when they reached the Northeastern Railroad, the other sailors got off, and went to the schooner; the libelant swore that he would not go on her, and, in despite of the remonstrances of witness persevered in his declarations to this effect; that the master came up, and asked who he was, and if he was for his schooner; on his reply that he was, the master ordered him to go aboard, and he positively refused to do so. The master confirms all this, and says that the man was drunk; that, finding libelant in this condition and refusing to go aboard, he went to the shipping commissioner and shipped another man; that he had no time to wait; his vessel was ready for sea; he intended to leave that evening, and that to do so he needed the services of the crew in fixing his deck load; so, this man refusing to go on board, he supplied his place at 10 A. M. The shipping commissioner says that he saw libelant the morning of 19th, about 11 A. M., and that he was then seeking the agents of the schooner. I have no doubt that the libelant did, about 1 o'clock, try to resume his engagement. I agree with the proctor for libelant that the fact that libelant was drunk when he went to the vessel, assuming that he was in this condition, would not be sufficient ground for rescission of this contract. *Duncan* v. *Shaw*, 19 Fed. Rep. 521. The difficulty in his way is his refusal to go aboard, spoken of by the master and the man Hendrix. The latter is in some measure corroborated by Mr. Getty at the railroad. He says that he heard a violent altercation between the sailor and the boarding house keeper after the wagon came up. To be sure, the witnesses are not free from suspicion. Neither is libelant. Unfortunately for him, he is alone. It is not improbable that the sailor was drunk, and that he did carry on as stated, and, if the master had had time and patience, he may have gotten him aboard all right. But the master was pressed for time. He was compelled to fill up his crew at once. He did so. It would be unreasonable to compel him to wait on the recovery of the sailor from the condition in which he put himself. When the place was filled, no subsequent application of libelant could help him. His own conduct forced the master to go for some one else, and, if he lost his place, libelant can only blame himself.

The libel is dismissed.